FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 APR -1  PM 3: 30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CLERK'S OFFICE
AT BALTIMORE

BY_____ _DEPUTY

ALWYN ALLI,

*Petitioner,*

v.

Civil Action No.: ELH-16-00606

UNITED STATES OF AMERICA,

*Respondent.*

## MEMORANDUM

Alwyn Alli, a member of the United States Marine Corps ("USMC"), is the subject of a special court-martial proceeding. In connection with that proceeding, he has filed a "Motion to Quash an Administrative Summons or Judicial Subpoena" (the "Motion"). ECF 1. In particular, pursuant to the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3401, *et seq.*, Alli seeks to quash a subpoena (ECF 2 at 3) issued by the military prosecutor to the Andrews Federal Credit Union (the "Credit Union"), seeking certain bank statements. The Motion is supported by Alli's "Sworn Statement." ECF 4. He states, in relevant part, *id.* at 1: "The financial records sought are not relevant to the legitimate law enforcement inquiry stated by the Government authority in its notice . . . ." In addition, in response to my Order of March 3, 2016 (ECF 5), Alli filed a "Jurisdiction Memo," in which he seeks to clarify the basis for this Court's jurisdiction to consider his Motion. ECF 6.

The United States (the "Government") filed "Respondent's Opposition to and Motion to Dismiss Movant's Motion to Quash an Administrative Summons or Judicial Subpoena" (ECF 7), which is accompanied by a memorandum of law (ECF 7-1) (collectively, the "Opposition"). The

Government has also submitted four exhibits.  ECF 7-3 through ECF 7-6.  Alli has filed a "Response."  ECF 9.

The Motion has been fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I will deny the Motion.

## I.  Factual and Procedural History[1]

Alli, a Master Sergeant on active duty, is or was a recruiter at the USMC Recruiting Sub-Station in Bowie, Maryland.  ECF 7-1 at 1; ECF 9 at 1 ("The Government errs in recitation of facts . . . Alli is not currently serving as a recruiter in Recruiting Sub-Station Bowie.").  On October 19, 2015, the USMC charged Alli with violations of the Uniform Code of Military Justice ("UCMJ"), including violations of 10 U.S.C. §§ 892, 893, 912 and 934.  ECF 7-1 at 1; *see* ECF 7-3 at 1-3, "Charge Sheet."  The Government asserts, ECF 7-1 at 2: "These charges stem from allegations that Alli was engaging in inappropriate sexual relationships with prospective applicants to the Marine Corps, failing to properly perform his duties, maltreating subordinates, being drunk on duty, and engaging in an adulterous relationship."  On October 20, 2015, Colonel J.A. Bolt, Commanding Officer of the Fourth Marine Corps District, Eastern Recruiting Region, referred these charges to a special court-martial.[2]  ECF 7-3 at 2.

---

[1] Petitioner's submissions provide little information about the factual and procedural history that precedes the Motion.  Therefore, I have referred to the history provided by the Government.

[2] In *United States v. Grant*, 753 F.3d 480, 482 n.1 (4th Cir. 2014), *cert. denied*, ___ U.S. ___, 135 S. Ct. 314 (2014), the Fourth Circuit explained the three types of courts-martial:

The Uniform Code of Military Justice (UCMJ) provides for three types of courts-martial: general, special, and summary.  10 U.S.C. § 816.  A general court-martial is the highest court level and has jurisdiction to try individuals for all crimes outlined in the UCMJ, including capital crimes.  *Id.* § 818.  Special courts-martial

The Government contends (ECF 7-1 at 2) that evidence from Alli's bank records may

> . . . show that Alli purchased alcohol during the workday when he was supposed
> to be on duty; that he was not at work when making the financial transactions; and
> that he made several specific financial transactions that corroborate the testimony
> of one of the women with whom he [is] alleged to have engaged in an
> inappropriate relationship.

Alli counters, ECF 9 at 2:

> [T]he rational [sic] provided here is nonsensical as (1) the Government has
> absolutely no evidence to indicate Master Sergeant Alli purchased alcohol during
> working hours, and (2) the proposition that an unnamed complaining witness has
> provided a statement which could be corroborated by Master Sergeants Alli's
> financial records is plain false. Further, the statement demonstrates a lack of
> understanding of the charges of which Alli had been accused.

By letter of February 28, 2016, Captain ("Capt.") Perry Duncan, the USMC trial

counsel,[3] notified Alli's attorney, Joseph Owens, that the Government would subpoena Alli's

bank records from the Credit Union. ECF 7-4 at 1. The subject line of the letter states, *id.*

(capitalization in original): "NOTICE PURSUANT TO 12 U.S.C. § 3401-3422 ICO UNITED

STATES V. MASTER SERGEANT ALWYN T. ALLI, USMC." The letter references "12

U.S.C. § 3401-3422 (Right to Financial Privacy Act of 1978)." *Id.* In particular, the letter states

that the records "are being sought by the United States Marine Corps in accordance with the

reference for use at your court-martial." *Id.* It also provides the following instructions on how to

contest the subpoena, *id.*:

> If you desire that such records or information not be made available, you must:

---

can try individuals for noncapital UCMJ offenses but are limited in the types of
punishment they may impose. For example, special courts-martial cannot require
dishonorable discharge. *Id.* § 819. Summary courts-martial adjudicate relatively
minor offenses and have jurisdiction over enlisted individuals, not military
officers. *Id.* § 820.

[3] The Government explains, ECF 7-1 n.1: "Prosecutors in the Marine Corps are referred
to as 'trial counsel.'"

a. Write a motion and sworn statement, stating that you are the customer whose records are being requested by the Government and either giving the reasons you believe that the records are not relevant to the legitimate law enforcement inquiry stated in this notice or any other legal basis for objecting to the release of the records.

b. File the motion and statement by mailing or delivering them to the Court.

c. Serve the Government authority requesting the records by mailing or delivering a copy of your motion and statement to Captain Perry Duncan[.]

d. Be prepared to come to court and present your position in further detail.

e. You do not need to have a lawyer, although you may wish to employ one to represent you and protect your rights.

By email of February 29, 2016, Alli's defense counsel notified Capt. Duncan, ECF 7-5 at

3: "The Defense will be filing a motion to quash . . . in the United States District Court for the

State of Maryland." By email of February 29, 2016, Capt. Duncan responded with "[a] point of

clarification for the record," *id.* at 2:

The Government has not requested a subpoena from the US District Court as the Government Trial Counsel has the power under RCM 703(e)(2)[4] to issue subpoenas requiring the production of evidence.

___

[4] The Manual for Courts-Martial, United States (2012 ed.) was amended by Executive Order 13696, 80 Fed. Reg. 35783 (June 22, 2015).  As amended, R.C.M. 703(e)(2)(C)(1), provides, 80 Fed. Reg. at 35803-35804 (emphasis added):

(C) *Who may issue.*

(1) A subpoena to secure evidence may be issued by:

(a) The summary court-martial;

(b) At an Article 32 preliminary hearing, detailed counsel for the government;

(c) *After referral to a court-martial, detailed trial counsel;*

(d) The president of a court of inquiry; or

(e) An officer detailed to take a deposition.

4

> The Government has simply notified the accused through his counsel, in accordance with 12 USC 3401 et seq., that it will be submitting the attached subpoena to Andrews FCU.

Defense counsel replied that, "[r]egardless of the intent of the Government," the Government used 12 U.S.C. § 3405. *Id.* at 1. Thus, claimed counsel, the "Government has requested an administrative subpoena," for which a motion to quash "shall be filed in the appropriate United States district court." *Id.*

Alli maintains that, on some unspecified date, although apparently on either February 28, 2016 or February 29, 2016, Alli's attorney "sent an email to the Military Judge [assigned to the court-martial] advising him of the Government's action." ECF 9 at 2. Thereafter, according to Alli, the military judge convened a "conference in accordance with *Rule for Courts Martial (RCM) 802.*" *Id.* at 2 (italics and underlining in original).[5]

On March 1, 2016, Capt. Duncan sent Alli's attorney an amended letter concerning the subpoena, dated February 29, 2016. ECF 7-6 at 1. Although the amended letter is similar to Capt. Duncan's letter of February 28, 2016 (ECF 7-4 at 1), it states, in relevant part, ECF 7-6 at 1: "File the motion and statement by mailing or delivering them to the Marine Corps Recruit Depot Parris Island, South Carolina location of the Navy and Marine Corps Trial Judiciary Southern Judicial Circuit."

---

[5] According to the Manual for Courts-Martial, United States (2012 ed.), R.C.M. 802(a) provides: "After referral, the military judge may, upon request of any party or *sua sponte*, order one or more conferences with the parties to consider such matters as will promote a fair and expeditious trial." According to the accompanying discussion, *id.* at II-77: "Conferences between the military judge and counsel may be held when necessary before or during trial. The purpose of such conference is to inform the military judge of anticipated issues and to expeditiously resolve matters on which the parties can agree, not to litigate or decide contested issues."

Alli filed this Motion on March 2, 2016. ECF 1. He does not reference Capt. Duncan's amended letter of February 29, 2016. *See* ECF 7-6 at 1. According to Alli, he received Capt. Duncan's amended letter only after filing the Motion. ECF 9 at 2.

## II. Discussion

In *Duncan v. Belcher*, 813 F.2d 1335, 1337-38 (4th Cir. 1987), the Fourth Circuit explained the RFPA's origins and purpose:

> Congress passed the Right to Financial Privacy Act of 1978 partly in response to *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976), which held that a bank customer has no Fourth Amendment expectation of privacy in records of his or her personal bank accounts. The operative section of the Privacy Act provides that "no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution" unless the government obtains a subpoena, a summons, a search warrant, or the customer's written consent, or unless the government submits a formal written request that complies with certain procedural requirements. 12 U.S.C. § 3402.

Title 12 U.S.C. § 3405 outlines the procedure by which "[a] Government authority may obtain financial records under section 3402(2) of this title pursuant to an administrative subpoena . . . ." Section 3407 provides the procedure by which "[a] Government authority may obtain financial records under section 3402(4) of this title pursuant to judicial subpena . . . ." Both §§ 3405(2) and 3407(2) prescribe notices that must accompany administrative and judicial subpoenas. The RFPA defines neither the term "administrative" nor the term "judicial." *See* 12 U.S.C. § 3401.

Title 12 U.S.C. § 3410(a) sets forth the process by which a customer may challenge a subpoena. It states, in relevant part, *id.* (emphasis added):

> *A motion to quash a judicial subpena shall be filed in the court which issued the subpena.* A motion to quash an administrative summons or an application to

6

enjoin a Government authority from obtaining records pursuant to a formal written request shall be filed in the appropriate United States district court.

Alli avers (ECF 1 at 2) (underlining in original): "It is unclear which provision of 12 U.S.C. § 3401-3422 the United States Marine Corps is operating under as their subpoena cites the entire statute . . . ." According to Alli, Capt. Duncan's subpoena should be treated as an administrative subpoena because "the language [that the USMC] used is most analogous to the provision for requesting an administrative subpoena." *Id.* at 3; *see id.* at 3-4. In his "Response," Alli "concedes trial counsel likely desired to issue a judicial subpoena . . . ." ECF 9 at 2. Yet, Alli maintains that Capt. Duncan "filed a request best described as an administrative subpoena." *Id.*

In Alli's "Jurisdiction Memo" (ECF 6), he maintains, *id.* at 1 (italics and underlining in original):

> The language in the notice [of the subpoena] neither complies with *12 U.S. Code § 3405 nor 3407.* Because the notice was not filed through the courts-martial, Master Sergeant Alli contends the Government is requesting an administrative subpoena. Nevertheless, whether an administrative or judicial subpoena is being sought, this Court holds jurisdiction. The United States Marine Corps can request an administrative subpoena, in which the United States District Court would be the sole arbitrar; further, the United States Marine Corps could file a judicial subpoena following the procedures in the rules for courts-martial. In such a scenario, the military court in which the motion is filed would have concurrent jurisdiction. Nonetheless, a military court does not have the power to enforce the judicial subpoena request.

The Government counters, ECF 7-1 at 4: "The subpoena issued to the Credit Union, pursuant to the RFPA, is a judicial subpoena issued by a military court-martial. Therefore, any motion to quash the subpoena must be filed with that court-martial, and this Court lacks jurisdiction to consider Alli's motion to quash."

The United States Court of Appeals for the Armed Forces ("CAAF") has already considered whether a subpoena issued by trial counsel in a court-martial is a judicial subpoena for purposes of the RFPA, and whether a military judge has the authority to entertain a motion to quash the subpoena.  In *United States v. Curtin*, 44 M.J. 439 (C.A.A.F. 1996) it answered both questions in the affirmative.  The court ruled, *id.* at 411: "[A] subpoena issued by a trial counsel is a 'judicial subpoena' within the meaning of § 3407 of the [RFPA]."  In particular, the CAAF said, *id.*:

> Article 46 of the [UCMJ, 10 U.S.C. § 846,] states:[6]
>
> > The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe. Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and shall run to any part of the United States, or the Territories, Commonwealths, and possessions.
>
> Acting pursuant to the foregoing authority, the President has authorized the trial counsel of a special or general court-martial to issue subpoenas. RCM 703(e)(2)(C).[7] Thus, trial counsel's function in the context of the military justice

---

[6] Title 10 U.S.C. § 846 has since been amended without relevant substantive change. Title 10 U.S.C. § 846(a) now provides: "The counsel for the Government, the counsel for the accused, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe."  Section 846(c) now provides: "Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction may lawfully issue and shall run to any part of the United States, or the Commonwealths and possessions."   Section 846(b) addresses access to representation for victims of alleged sex-related offenses.

[7] R.C.M. 703(e)(2)(C) in The Manual for Courts-Martial, United States (1995 ed.), on which the CAAF relied in *Curtin*, 33 M.J. at 441 n.3, provided: "A subpoena may be issued by the summary court-martial or trial counsel of a special or general court-martial to secure witnesses or evidence for that court-martial. A subpoena may also be issued by the president of a

system parallels the functions of a clerk of court of a United States District Court who issues subpoenas for that court as a ministerial act. Fed. R. Crim. P. 17.3 Thus, in the terms of the statute: "A motion to quash a judicial subpena shall be filed in the court which issued the subpena." 12 USC § 3410(a).

The court also concluded that "the motion to quash would be presented to the military judge who presided over the court-martial in question." *Id.*

Here, the simple and undisputed fact is that Capt. Duncan issued the subpoena pursuant to a pending court-martial. Indeed, Capt. Duncan's letter of February 28, 2016, states that the records "are being sought by the United States Marine Corps in accordance with the reference for use at your court-martial." ECF 7-4 at 1. In a subsequent email of February 28, 2016, and in a letter of February 29, 2016, Capt. Duncan repeatedly clarified that he was issuing the subpoena pursuant to his authority as a military prosecutor in the court-martial. *See* ECF 7-5 at 3; ECF 7-6 at 1.

Moreover, as the government notes, a military prosecutor has no authority to issue an administrative subpoena. ECF 7-1 at 7-8. Rather, pursuant to 10 U.S.C. § 846(c) and R.C.M. 703(e)(2)(C), trial counsel may only issue a subpoena within the context of a court-martial.

In essence, Alli asks the Court to ignore the fact that Capt. Duncan issued the subpoena pursuant to a court-martial. Rather, Alli maintains that the Court should construe the subpoena as an administrative subpoena because the subpoena neither cited specifically to § 3407 nor stated the precise procedure by which judicial subpoenas may be quashed under the RFPA. As the government argues (ECF 7-1 at 6): "Alli cites no authority that requires the requesting agency to identify in its notice whether records are being sought under 12 U.S.C. § 3405 or 12

court of inquiry or by an officer detailed to take a deposition to secure witnesses or evidence for those proceedings respectively." As noted, *supra*, note 4, R.C.M. 703(e)(2)(C) has since been amended without relevant substantive change.

U.S.C. § 3407." Moreover, Alli's request that the Court ignore the judicial context in which Capt. Duncan issued the subpoena asks the Court to exalt form over substance. This I will not do.

Alli's argument that this Court may exercise concurrent jurisdiction over a motion to quash a judicial subpoena issued by a court-martial is also unavailing. He avers, ECF 6 at 3: "[I]n a criminal case in which the Accused is a member of the United States Armed Forces, any of number [sic] entities could exercise jurisdiction." *See* ECF 9 at 3. This may well be true, but the fact is that the USMC has convened a court-martial as to Alli. He now asks this Court to rule on a motion to quash a subpoena pursuant to a military court proceeding over which a military judge will ultimately preside. The RFPA itself forecloses this possibility. As noted, 12 U.S.C. § 3410(a) states, in relevant part, *id.*: "A motion to quash a judicial subpena shall be filed in the court which issued the subpena." Thus, there is no statutory basis for this Court to consider a motion to quash a judicial subpoena that it did not issue.

In light of the foregoing, I conclude that the subpoena issued to the Credit Union, pursuant to the RFPA, is a judicial subpoena issued by a military court-martial. Accordingly, any motion to quash the subpoena must be filed with that court-martial, and this Court lacks jurisdiction to consider Alli's Motion.

Alternatively, even if this Court has jurisdiction, in light of the deference owed to a military court in the midst of conducting a court-martial, I would decline to intervene in the court-martial.

Alli offers no authority to support this Court's intervention in a court-martial. As I see it, for this Court to rule on what is properly a pretrial motion before a court-martial would violate the Supreme Court's guidance in *Schlesinger v. Councilman*, 420 U.S. 738 (1975).

In *Councilman*, a servicemember who was being prosecuted by court-martial obtained an order from a federal district court enjoining the ongoing court-martial proceeding, on the ground that the drug related offenses with which he was charged "were not 'service connected' and therefore not within the military court-martial jurisdiction." *Id.* at 740. The Supreme Court held that the district court "had subject-matter jurisdiction" to issue such an injunction, *id.* at 753, but that it should have refrained from intervening. *Id.* at 758 ("We hold that when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his cases in the military court system, the federal district courts must refrain from intervention, by way of injunction or otherwise.").

Although *Councilman* is not on all fours with this case, its reasoning is instructive. The *Councilman* Court began its discussion of the merits by emphasizing the independence of the military justice system from the supervision of the Article III judiciary, 410 U.S. at 746:

> This Court repeatedly has recognized that, of necessity, "(m)ilitary law . . . is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." Congress . . . [has] never deemed it appropriate to confer on this Court "appellate jurisdiction to supervise the administration of criminal justice in the military." Nor has Congress conferred on any Art. III court jurisdiction directly to review court-martial determinations. The valid, final judgments of military courts, like those of any court of competent jurisdiction not subject to direct review for errors of fact or law, have res judicata effect and preclude further litigation of the merits. This Court therefore has adhered uniformly to "the general rule that the acts of a court martial, within the scope of its jurisdiction and duty, cannot be controlled or reviewed in the civil courts, by writ of prohibition or otherwise." (Citations and footnote omitted.)

The Supreme Court gleaned from this discussion that "the balance of factors governing exercise of equitable jurisdiction by federal courts normally weighs against intervention, by injunction or otherwise, in pending court-martial proceedings." *Id.* at 740. It pointed out, however, that this general principle of military judicial independence is subject to a "qualification—that the court-martial's acts be 'within the scope of its jurisdiction and duty.'" *Id.* (citation omitted in original). The Court determined that collateral review for voidness of final judgments of courts-martial came within the subject-matter jurisdiction of the district courts. *See id.* at 747-53. However, the Court remarked: "This is not to say. . . that for every [serious] consequence [of a court-martial conviction] there is a remedy in Art. III courts." *Id.* at 752.

The Court articulated a test for "whether a court-martial judgment properly may be deemed void." *Id.* at 753. It instructed district courts to consider "the nature of the alleged defect, and the gravity of the harm from which relief is sought," and to assess both of those factors "in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress." *Id.* Applying this test to the scenario of a servicemember seeking an injunction against his ongoing court-martial, the Court ruled that, although the claim fell "within the limited jurisdiction conferred on the federal courts," it was not "consistent[ ] with the principles governing equitable relief" for a district court to "exercise its remedial powers" in that circumstance. *Id.* at 754.

More recently, the Fourth Circuit explained in *Hennis v. Hemlick*, 666 F.3d 270, 271 (4th Cir. 2012), *cert. denied*, ___ U.S. ___, 132 S. Ct. 2419 (2012): "[P]rinciples of comity, respect for the expertise of military judges, and judicial economy weigh against federal court

intervention in pending court-martial proceedings and in favor of requiring exhaustion of all available remedies within the military justice system before a federal court's collateral review."

### III.   Conclusion

I conclude that this Court lacks jurisdiction to consider the Motion to Quash.  In the alternative, in light of the deference owed to a military court in the midst of conducting a court-martial, I decline to intervene.

An Order follows.

Date: April 1, 2016                        /s/
                                           Ellen Lipton Hollander
                                           United States District Judge

13